UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:                                          :     Chapter 15
                                                :
                                                :     Case No. 18-_____  (___)
HITS AFRICA LTD.                                :
                                                :
        Debtor in a                            :
        Foreign Proceeding.                    :
                                                :
-----------------------------------------------------------x

## DECLARATION OF CLAIRE LOEBELL
## IN SUPPORT OF CHAPTER 15 PETITION OF HITS AFRICA LTD.
## FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING

I, CLAIRE LOEBELL, hereby declare under penalty of perjury under the laws of the United States as follows:

1. My colleague Keiran Hutchison ("**Hutchinson**") and I are the duly appointed Joint Official Liquidators (the "**Liquidators**") of HiTs Africa Ltd. (in Official Liquidation) ("**HAL**"), a company undergoing liquidation under the supervision of the Grand Court of the Cayman Islands, Financial Services Division (the "**Cayman Court**"), Cause No. FSD 96 of 2013 (CQJ) (the "**Cayman Liquidation**") pursuant to section 92 of the Cayman Islands Companies Law (2018 Revision) (the "**Cayman Companies Law**").

2. I respectfully submit this declaration (the "**Declaration**") in support of the Liquidators' petition seeking recognition of the Cayman Liquidation pursuant to 11 U.S.C. § 1517(b)(1) as a foreign main proceeding and certain additional relief pursuant to the United States Bankruptcy Code (the "**Bankruptcy Code**"), as described in detail below (the "**Chapter 15 Petition**").

3. I am a Chartered Accountant (Institute of Chartered Accountants of England & Wales), a member of the United Kingdom Insolvency Practitioners Association and the Recovery and

1

Insolvency Specialists Association of the Cayman Islands and an Executive Director of EY Cayman Ltd, an affiliate of Ernst & Young Global Limited, a respected international accounting firm ("**EY**"). My colleague and fellow liquidator, Keiran Hutchison, also is a Chartered Accountant and is a Partner at EY, and we both are qualified practitioners under the Cayman Islands Insolvency Practitioners' Regulations 2008. We work out of the offices of 62 Forum Lane, Camana Bay, PO Box 510, Grand Cayman, KY1-1106, Cayman Islands.

4. I am duly authorized to make this declaration as a liquidator of HAL. I am fully familiar with the facts of this matter and have fully participated in the Cayman Liquidation since my appointment in May 2015, including applying to the Cayman Court for an order sanctioning this application for recognition in the United States. Unless otherwise indicated, all statements contained herein are true to the best of my knowledge and based upon personal knowledge or my review of relevant documents.

5. I am familiar with the Model Law on Cross-Border Insolvency, adopted by the United Nations Commission on International Trade Law (UNCITRAL), and approved by a resolution of the United Nations General Assembly on December 15, 1997. I also understand that the Model Law has been adopted in the United States as chapter 15 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* ("**Bankruptcy Code**").

6. Pursuant to the Cayman law, court-appointed liquidators, such as myself, are officers of the Cayman Court. As such, I make this Declaration as an officer of the Cayman Court, and request an extension of comity for the benefit of all HAL creditors and investors, whose interests I represent.

7. On January 29, 2014, the Cayman Court filed a Winding Up Order in which it, *inter alia*, (i) ordered that HAL be wound up in accordance with the Cayman Companies Law and under the supervision of the Cayman Court; (ii) appointed Mr. Hutchinson as official liquidator of HAL; and (iii)

authorized the Liquidators to commence proceedings for recognition of their appointment in any relevant jurisdiction (the "**Liquidation Order**"). A true and correct copy of the Liquidation Order is attached hereto as **Exhibit 1**. On May 6, 2015, the Cayman Court filed an Order appointing me as a joint official liquidator, to act jointly and severally with Mr. Hutchinson as Joint Official Liquidators of HAL ("**Liquidator Order**"). A true and correct copy of the Liquidator Order is attached hereto as **Exhibit 2**. On December 20, 2017, the Cayman Court authorized the Liquidators to retain U.S. counsel and commence ancillary proceedings in foreign jurisdictions to seek recognition of their appointment ("**Sanction Order**"). A true and correct copy of the Sanction Order is attached hereto as **Exhibit 3**.

8. The Liquidators perform our duties as the joint official liquidators of HAL in and from the Cayman Islands, where we reside.

9. For the reasons discussed below, I submit that: (i) Mr. Hutchinson and I each are a duly appointed "foreign representative" of the Cayman Liquidation and that the Cayman Liquidation constitutes a "foreign proceeding" within the meaning of sections 101(24) and (23) of the Bankruptcy Code, respectively; (ii) this case was properly commenced in accordance with the requirements of chapter 15 of the Bankruptcy Code; and (iii) the Cayman Liquidation satisfies all the requirements to be recognized as a "foreign main proceeding" pursuant to Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

**HAL's Pre-Liquidation Business and Relevant Facts**

10. HAL is a Cayman Islands exempted company incorporated on May 24, 2007 under the laws of the Cayman Islands, with its prior registered office at the offices of Trident Trust Company (Cayman) Ltd. P.O. Box 847 GT 1 Capital Place, Shedden Road, Grand Cayman, Cayman Islands. On February 19, 2014, HAL's registered office was changed to EY Cayman Ltd., 62 Forum Lane, Camana Bay, PO Box 510, Grand Cayman, KY1-1106, Cayman Islands.

3

11. Up until entry of the Liquidation Order, HAL was engaged in business operations in the sub-Saharan telecoms market, predominantly in the United Republic of Tanzania, the Democratic Republic of the Congo and the Republic of Equatorial Guinea. HAL's main function was that of a holding company for various telecom subsidiaries across four countries in Africa. Based on the investigations undertaken by the Liquidators, we understand that the corporate structure is currently as follows:[1]

- HAL's business operations in Tanzania are conducted through Excellentcom Tanzania Ltd. ("**Excellentcom**") - a joint venture in which HAL has a 56% ownership interest;

- HAL's business operations in Republic of Congo are conducted through SemaTel SPRL ("**SemaTel**") - a joint venture in which HAL has a 65% ownership interest;

- HAL's business operations in Equatorial Guinea were conducted through GreenCom (formerly Hits Equitorial Guinea) ("**GreenCom**") - a joint venture in which HAL previously held an ownership interest;

- HAL's business operations in Liberia are conducted through Atlantic Wireless Company ("**Atlantic Wireless**" and collectively with Excellentcom, SemaTel and GreenCom, the "**African Subsidiaries**") - a joint venture in which HAL has a 55% ownership interest;

- HAL is the 100% owner of Hits Africa Bahrain W.L.L, a company formed under the laws of Bahrain which does not appear to have any assets or operations; and

- HAL is the 100% owner of Hits Africa Business Consultancy SPC, a company formed under the laws of Bahrain which does not appear to have any assets or operations.

12. HAL is 92.82% owned by HITS Telecom Holding Company K.S.C. ("**HITS Telecom Holding**"), a telecom holding company listed on the Kuwait Stock Exchange.

### The African Subsidiaries

---

[1] From our investigations, we understand that HAL acquired its interest in each of the African subsidiaries when they had no assets other than licenses in their respective countries with a view to establishing operations in each country.

4

13.     The following is a more detailed summary of each of the African Subsidiaries for which HAL currently holds an ownership interest, as well as their status as of the date of the Chapter 15 Petition:

    A.     **ExcellentCom** – HAL owns 56% of the shares in ExcellentCom and is also due $37.7 million as part of a shareholder loan agreement. The Liquidators' investigations indicated that: (i) ExcellentCom was never fully operational and the principal African office has been closed since at least 2011; (ii) ExcellentCom's tangible assets, consisting of telecoms towers, had been either subject to vandalism or stolen as ExcellentCom was without the resources to keep these assets secure; (iii) ExcellentCom had a significant number of local creditors and a dispute with its minority shareholder; and (iv) ExcellentCom's telecoms license would not be reinstated.

    B.     **SemaTel** – HAL owns 65% of the shares in SemaTel and is also due $37.1 million from SemaTel as part of a shareholder loan agreement. The Liquidators have been informed that SemaTel was never operational, that its operating license has been revoked and that there are no other assets that can be recovered other than a certain portion of proceeds from the sale of SemaTel shares. Work on further realizations in connection with this asset continues.

    C.     **Atlantic Wireless** – The Liquidators' investigation revealed that Atlantic Wireless ceased operations prior to the Liquidators' appointment, as it failed to obtain a sufficient market share in Liberia and failed to acquire funding for approximately USD $30 Million in necessary equipment repairs.

### The Cayman Liquidation

14.     HAL's Cayman Liquidation was the result of an involuntary petition for liquidation filed in the Cayman Court by Huawei Technologies Co. Ltd. ("**Huawei**"), a multinational networking

telecommunications, services and consumer electronics company based in Shenzhen, in the People's Republic of China. Huawei is one of the largest manufacturers of telecommunications equipment in the world.

15. Pursuant to an April 28, 2006 Purchase Long Form Agreement ("**PLFA**"), as amended, entered into between HAL and Excellentcom on one hand, and Huawei and Huawei Technologies (Tanzania) Co., Ltd. ("**Huawei Tanzania**") on the other: (i) Huawei and Huawei Tanzania were to provide telecom equipment and services to Excellentcom; and (ii) HAL and ExcellentCom were to be jointly and severally responsible in respect of all obligations including but not limited to payments, repayments and provision of security.

16. On March 18, 2013, Huawei served HAL with a Statutory Demand ("**Statutory Demand**") pursuant to the Cayman Companies Law, claiming that HAL owed the sum of USD $21,303,468.26 and interest of USD $6,314,347.95 calculated up to including the date of the Statutory Demand, being a total indebtedness of USD $27,617,816.21.

17. After HAL failed to make payment to Huawei in accordance with the Statutory Demand, on July 16, 2013, Huawei presented a Petition for the winding up of HAL pursuant to Section 92 of the Cayman Companies Law, on the ground that HAL is insolvent and unable to pay its debts, namely, HAL's debt under the PLFA ("**Involuntary Petition**"). A true and correct copy of the Involuntary Petition is attached as **Exhibit 4**.

18. On November 28-29, 2013 the Cayman Court heard arguments in connection with the Involuntary Petition from representatives for HAL and Huawei. On January 29, 2014, the Cayman Court entered the Liquidation Order and a Judgment providing certain findings of fact and conclusions of law in connection with the Cayman Court's entry of the Liquidation Order ("**Cayman Judgment**"). A true and correct copy of the Cayman Judgment is attached hereto as **Exhibit 5**.

6

19. The amount of claims filed against HAL in the Cayman Liquidation is currently $195,419,017. The Liquidators have begun the process of adjudicating claims received in accordance with the provisions of the Companies Winding Up Rules, 2018, and creditors will receive an adjudication notice advising that their claim has been accepted, partially accepted or rejected in full.

20. However, HAL's primary assets are still being investigated. At present, the Liquidators are investigating, *inter alia*, potential claims and causes of action to recover amounts due from third parties and related parties in connection with HAL's failed business ventures. In particular, the Liquidators have filed this application, *inter alia,* to obtain banking records related to HAL's business and subsidiaries, all of which engaged in US Dollar wire transactions. The Liquidators have not been able to obtain important banking records of HAL and its subsidiaries to date, obtaining these records is crucial to understanding the causes of HAL's insolvency and asset position, as well as to evaluate whether claims regarding transactions by former management are accurate.

### Qualifications For Recognition and Jurisdiction in the United States

21. I have been advised that in order to qualify for recognition under chapter 15, HAL's Chapter 15 Petition must meet certain requirements. In particular, it must be brought by a "foreign representative" in respect of a "foreign proceeding" that is pending before a "foreign court", all as defined in the Bankruptcy Code. The foreign debtor also must meet one of the bases for qualifying as a debtor under the Bankruptcy Code.

22. I am aware of the definition of "foreign representative" as referred to in 11 U.S.C. § 101(24) and believe that the Liquidators qualify as such. The Liquidators were appointed by the Cayman Court pursuant to the Cayman Companies Law to act as the joint official liquidators of HAL. Among other things, the Liquidators are charged with administering and liquidating the business and assets of HAL and acting on its behalf. The Liquidators also are authorized to bring or defend any

action or legal proceeding in the name or on behalf of HAL, for the benefit of its estate. As such, the Liquidators are the persons responsible for representing HAL in the Cayman Liquidation and in all related matters, including this matter, as its "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code.

23. I also have been advised that a "foreign court" is defined in section 1502(3) of the Bankruptcy Code as "a judicial or other authority competent to control or supervise a foreign proceeding." I respectfully submit that the Cayman Court clearly qualifies as a "foreign court" for purposes of section 1502(3).

24. I understand that a "foreign proceeding" is defined as a "collective judicial . . . proceeding in a foreign county … under a law related to insolvency or the adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23). The Cayman Liquidation clearly qualifies as such, as it is by definition a liquidation proceeding pursuant to and governed by the Cayman Companies Law under the supervision of the Cayman Court for the benefit of all of HAL's creditors, investors and parties in interest.

25. Finally, I am aware of the requirements for recognition as a foreign main and non-main proceeding under Section 1517(b)(l) and (2) of the Bankruptcy Code. I believe that the Cayman Liquidation qualifies as a foreign main proceeding and that the Cayman Islands is HAL's center of main interests ("**COMI**"). As demonstrated by the facts included herein, I further believe that HAL is engaged in non-transient economic activity in the Cayman Islands.

26. As noted above, HAL was formed under the laws of the Cayman Islands and maintained its registered office there. I am advised that under U.S. law, this fact supports a statutory presumption that the Cayman Islands is HAL's COMI.

27. In addition, substantial HAL assets - including almost all of its known liquid assets (i.e., HAL's bank account balance) - are located in the Cayman Islands.

28. As Liquidators, we have displaced the board of directors of HAL, HAL is in a Cayman Liquidation before a Cayman Court, and all creditors of HAL may submit their claims in the Cayman Liquidation. Moreover, HAL's remaining affairs are being conducted from the Cayman Islands, and have been since 2014.

29. Based upon the above, as well as the Statutory Demand and the Involuntary Petition, all of which focused on the Cayman Islands, I believe that all relevant creditors, stakeholders, and shareholders regard HAL to be a Cayman Islands company.

30. The Liquidation of HAL is taking place in the Cayman Islands. Nearly all of the work to date relating to the Cayman Liquidation (and post-liquidation activities) has been conducted in the Cayman Islands and all of the work is supervised by me and my fellow Liquidator, and, ultimately, subject to the supervision of the Cayman Court.

31. Initially, I and my colleagues in the Cayman Islands caused the requisite notices and filings to be filed, published and served, arranged for the resignation of HAL existing directors, and for the transfer of HAL's books and records to the new registered office.

32. We also have taken steps to protect HAL's assets by negotiating settlements with affiliates, adjudicating claims against HAL and investigating claims against third parties, all from our offices in the Cayman Islands.

33. The Liquidators also have taken steps to secure and recover HAL's assets, the proceeds of which are held in the Cayman Islands. The Liquidators also have retained counsel and have arranged for the issuance of numerous letters requesting further information regarding certain transfers made by HAL prior to its entry into liquidation.

34. The Liquidators likewise have conducted numerous conference calls with the former management of HAL in order to understand the HAL structure; HAL's day to day operations; and HAL's relationship with its parent company and related parties. As a result of these meetings, extensive documentation has been received and is stored in the Cayman Islands. The Liquidators have performed a thorough review of these documents stored in the Cayman Islands to attempt to understand HAL's financial position and the financial position of the African Subsidiaries, identify potential assets/liabilities, and reconcile the financial records with underlying supporting documentation. The Liquidators continue to follow up on outstanding document requests in order to determine the veracity of the information provided.

35. The Liquidators have also spent dozens of hours corresponding and meeting with stakeholders and responding to their queries and concerns surrounding the Cayman Liquidation. The first stakeholder meeting was held on April 23, 2014, at which the Liquidators' first report was presented and the liquidation committee was formed. Based on investigations to date, the Liquidators are developing a litigation strategy with Cayman and U.S. counsel. All of the foregoing activities have been directed from our offices in the Cayman Islands.

36. As the Liquidators' investigations continue, the relationships of the African Subsidiaries to HAL and potential claims against counterparties are becoming clearer. Potential claims will be overseen, managed and resolved (by litigation or negotiation) by the Liquidators from the Cayman Islands.

37. Under the circumstances, I respectfully submit that the Cayman Islands is the COMI of HAL and that there is no basis for rebutting the presumption that the Cayman Islands is HAL's COMI.

38. In accordance with 11 U.S.C. § 1515(c), I am aware of no other pending foreign insolvency proceedings, except the Cayman Liquidation, in which HAL is the subject of the proceeding.

39. In accordance with Bankruptcy Rule 1007-1, there are no known and pending actions in the United States in which HAL is named as a party. I note that HAL also does not seek provisional relief against any party at this time. The disclosures required under Bankruptcy Rule 7007.1 are attached hereto as **Exhibit 6**.

### Relief Requested in the United States

40. In addition to recognition of the Cayman Liquidation as a foreign main proceeding, the Liquidators respectfully request relief authorizing discovery pursuant to 11 U.S.C. § 1521(a)(4), once this Court recognizes the Cayman Liquidation as a foreign main proceeding. The Liquidators have been unsuccessful in their attempts to obtain full and complete copies of HAL's financial records from banking institutions. Copies of certain correspondence requesting information as to transactions and responses are attached hereto as **Exhibit 7**.

41. The Liquidators have potential claims against third parties and related parties in connection with certain transfers made by HAL and its subsidiaries prior to its entry into liquidation, that are the subject of ongoing investigation ("**Third Party Claims**"). These potential claims, requiring further investigation, fall into the following categories: (i) potential claims against minority shareholders, directors, officers and consultants of the African Subsidiaries and HAL in connection with the transfer of HAL funds for which the Liquidators have little to no documentation supporting such transfers; (ii) potential claims against unrelated individuals and entities in connection with large, single transfers made prior to commencement of the Cayman Liquidation; and (iii) potential claims

against directors, management and affiliates in connection with their fiduciary duties and management of HAL and its assets.

42.     The Liquidators have attempted to obtain information directly from banking institutions as to the Third Party Claims, but the responses to the Liquidators' inquiries, where even provided, have been wholly inadequate. Further, discovery in the United States is needed to attest to the veracity of any information provided so far by such banking institutions and other third parties.

43.     Critical information concerning the Third Party Claims is located in the United States in the form of wire transfer records maintained by intermediary banks located in the State of New York, as well as bank statements and other documents reachable through bank discovery. These potential claims of the HAL estate require the Liquidators to accurately trace and recreate the flow of funds pertaining to U.S. dollar-denominated transactions.

44.     Conducting discovery in connection with intermediary banks is critical to our investigation and to the Liquidators' ability to obtain a recovery for HAL's creditors and investors.

45.     Under the circumstances, the Liquidators respectfully request that, pursuant to 11 U.S.C. § 1521(a)(4), the Court allow them to commence discovery in the United States with respect to HAL and its affiliates, as well as any other related persons and entities, to be served upon certain banks doing business in the State of New York.

46.     Obtaining this information will substantially assist the Liquidators in realizing assets of HAL and determining whether, where and how HAL should commence actions against third parties.

47.     For all of these reasons, I respectfully request that this Court enter an Order (i) recognizing my colleague, colleague Keiran Hutchison, and I as duly authorized foreign representatives of HAL and the Cayman Liquidation of HAL as a foreign main proceeding under chapter 15; (ii) granting the additional

relief requested under section 1521(a)(4); and (iii) such other and further relief as this Court may deem just and proper.

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Grand Cayman, Cayman Islands
31 MAY, 2018

**CLAIRE LOEBELL**
*Joint Official Liquidator of HiTs Africa Ltd.*